United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,

        Plaintiffs,

  v.

BUREAU OF LAND MANAGEMENT, *et al.*,

        Defendants.

                          /

No. C 03-2509 SI

**ORDER AND INJUNCTION REGARDING FINAL RELIEF**

     On March 14, 2006, the Court issued an order resolving the parties' cross-motions for summary judgment. The Court found that defendants Bureau of Land Management ("BLM") and U.S. Fish and Wildlife Service ("FWS") violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*, in taking actions related to the management of the Imperial Sand Dunes Recreation Area ("ISDRA") and two threatened species that live there, the desert tortoise and the Peirson's milk-vetch. The Court requested further briefing from the parties regarding the appropriate form of relief. After careful consideration of the parties' briefs, the record in this case, and the relevant law, the Court issues the following order.

     Although the parties have agreed on certain aspects of relief,[1] they dispute whether the Court should vacate the agency actions and documents at issue. Defendants argue that the Court should exercise its discretion not to set aside the agency documents, and instead only remand those documents for further consideration and reexamination consistent with the Court's summary judgment order.

---

[1] Notwithstanding the fact that the parties have agreed on certain aspects of relief, defendants' papers reserve the right to seek an appeal on the merits of the litigation and the relief ordered by the Court.

United States District Court

For the Northern District of California

1  Defendants contend that portions of these documents are unaffected by the deficiencies identified by

2  the Court in its summary judgment order, and that the agencies should be permitted to continue

3  implementing those documents because they contain the most recent management prescriptions for the

4  ISDRA.  Defendants also argue that the agencies will have more flexibility on remand if the Court does

5  not vacate the documents because, *inter alia*, the agencies could decide to supplement the documents

6  rather fully re-create the documents.

7      In contrast, plaintiffs contend that the Court should vacate the 2005 Record of Decision ("2005

8  ROD"), the 2003 ISDRA Recreation Area Management Plan ("2003 RAMP"), and the Final

9  Environmental Impact Statement ("FEIS") in conjunction with the remand because vacatur is necessary

10  to ensure that the agencies take the required "hard look" at the issues on remand.  Plaintiffs also assert

11  that, contrary to defendants' representations, those portions of the agency documents which may appear

12  to be unrelated to the deficiencies addressed in the Court's summary judgment may actually be

13  connected.  For example, plaintiffs take issue with defendants' assertion that vacatur would jeopardize

14  "significant projects and the funding budgeted for such projects (nearing 1 million dollars) which will

15  not affect sensitive resources in the Dunes"; plaintiffs argue that because the FEIS did not analyze the

16  impact of the RAMP on endemic invertebrates, there is no way of knowing whether those projects

17  would, in fact, impact sensitive resources in the Dunes.

18      The Administrative Procedures Act provides that a court "shall hold unlawful and set aside

19  agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in

20  accordance with law" or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A) &

21  (D); *see also Alsea Valley Alliance v. Dep't of Commerce*, 358 F.3d 1181, 1185 (9th Cir. 2004)

22  ("Although not without exception, vacatur of an unlawful agency rule normally accompanies a

23  remand.").  Here, defendants have not made a sufficient showing to warrant deviation from the general

24  rule that unlawful agency actions are set aside and remanded.  Although the Court is not unsympathetic

25  to the issues raised by defendants, the Court finds that vacatur of 2005 ROD and the FEIS is necessary

26  to allow the agencies to fully and meaningfully address the substantive and procedural flaws detailed

27

28

in the Court's summary judgment order.[2]  To the extent defendants wish to continue with certain portions of the 2003 RAMP, such as the milk-vetch monitoring program, nothing in this order precludes defendants from taking whatever steps are necessary to do so.

The parties also dispute whether the Court should impose any deadlines, as well as the mechanism for termination of injunctive relief.  As set forth below, the Court will impose a deadline for critical habitat designation in light of the fact that the ESA places great importance on the timeliness of this designation.  *See* 16 U.S.C. § 1533(a)(3) (requiring agency to designate critical habitat "concurrently" with listing of species).[3]  With respect to termination of injunctive relief, the Court finds it appropriate for all injunctive relief to expire 90 days after the issuance of the new Record of Decision.[4] If, when this document is issued, plaintiffs or defendant-intervenors contend that the final agency documents or rules are inadequate in any way, they may apply to this Court for relief.  This Court will address at that time whether such relief may be addressed or provided  in this lawsuit, or whether such claims must be raised in a separate proceeding.

Accordingly,  IT IS ORDERED AND ENJOINED as follows:

1.    BLM's 2005 ROD approving the 2003 RAMP, and the FEIS for the 2003 RAMP, are vacated and remanded, and the 2003 RAMP is remanded, to the BLM for further action and consideration consistent with all applicable laws and with the Court's March 14, 2006 Order.

2.    Those portions of the January 2005 Biological Opinion ("2005 BiOp") for the 2003 RAMP prepared by the FWS relating to the Peirson's milk-vetch are vacated and remanded to FWS for further action and consideration consistent with all applicable laws

---

[2] The Court does not vacate the 2003 RAMP because plaintiffs did not directly challenge that document.  The parties agree that vacating the 2005 ROD renders the 2003 RAMP nonoperational.

[3] Although defendant-intervenors originally argued that the Court should impose a 12 month deadline for all actions, the intervenors' reply states that they agree with defendants' proposal, which contains no deadlines.

[4] It is the Court's understanding that the new ROD would be the final agency document created on remand.  If this understanding is incorrect – for example, if the new FEIS or the new critical habitat rule is issued after the new ROD – injunctive relief would expire 90 days after the issuance of the last agency document or rule.

United States District Court

For the Northern District of California

1     and with the Court's March 14, 2006 Order.

2     3.    The Incidental Take Statement ("ITS") authorizing take of the desert tortoise contained

3           in the 2005 BiOp is remanded to FWS for further action and consideration consistent

4           with all applicable laws and with the Court's March 14, 2006 Order.  Subject to the

5           following conditions BLM may rely upon the take exemption provided by the ITS

6           pending remand.

7           (a)    BLM shall comply with all the Terms and Conditions of the ITS.

8           (b)    BLM shall, within seven days of receipt or generation, provide plaintiffs and

9                  defendant-intervenors copies of all correspondence with FWS generated pursuant

10                 to Term and Condition 4.1 dealing with reported or observed injury or mortality

11                 to any desert tortoise.

12    4.    FWS's exclusions of critical habitat pursuant to Section 4(b)(2) of the ESA, 16 U.S.C.

13          § 1533(b)(2), in its Final Critical Habitat Rule, August 4, 2004, Designation of Critical

14          Habitat for Astralagus magdalene var. peirsonii (Peirson's milk-vetch), 69 Fed. Reg.

15          47,330 (Aug. 4, 2004) ("Final Rule"), and accompanying economic analysis, are

16          remanded to FWS for further action and consideration consistent with all applicable laws

17          and with the Court's March 14, 2006 Order.  Pending the issuance of a new final critical

18          habitat rule on remand, the following conditions shall apply:

19          (a)    The August 2004 Final Rule shall remain in full force and effect with all areas

20                 currently designated as critical habitat remaining so designated pending the

21                 completion of the new critical habitat rule.

22          (b)    FWS shall submit a new final critical habitat rule to the Federal Register for

23                 publication  therein no later than February 1, 2008.

24          (c)    FWS's August 5, 2003 Proposed Designation of Critical Habitat for the Peirson's

25                 milk-vetch, 68 Fed. Reg. 46,143, shall be reinstated during the remand period

26                 and shall remain effective pending the completion of a new critical habitat rule

27                 or the issuance of a new proposed critical habitat rule for the Peirson's milk-

28                 vetch.

**United States District Court**
For the Northern District of California

4

**United States District Court**
For the Northern District of California

5.   Notwithstanding any contrary provision of the 2005 ROD, 2003 RAMP, or the FEIS, BLM shall maintain the vehicle closures as identified in the "Temporary Closure of Approximately 49,3000 Acres to Motorized Vehicle Use of Five Selected Areas in the ISDRA," 66 Fed. Reg. 53,431-02 (Oct. 22, 2001) ("Temporary Closure"). In maintaining and enforcing the closures, BLM shall:

(a)   provide continued public notification of closure areas by posting closure maps at kiosks and public distribution of closure brochures and maps.

(b)   provide written monthly reports to plaintiffs and defendant-intervenors summarizing the results of observations from aerial overflights, if any, summarizing visitation data, summarizing law enforcement compliance data relating to closure violations, and summarizing data related to actions taken to improve compliance with closures.

6.   All injunctive relief shall expire 90 days after the Bureau's issuance of a new ROD approved after the completion of appropriate levels of land-use planning, environmental analysis, and consultation pursuant to NEPA, FLPMA, and the ESA. *See also* note 4, *supra*.

7.   BLM and FWS shall provide plaintiffs and defendant-intervenors with copies of the relevant final documents and file a Notice with this Court indicating that the documents have been issued. Within 90 days of the filing of the Notice, plaintiffs and defendant-intervenors may file a response, if any, to the Notice explaining why the terms of this Order should continue. If no responses are filed to the Notice, this Order shall automatically expire 90 days following the filing of the Notice. In the event plaintiffs and/or defendant-intervenors object to the expiration of this Order, the Court will, as appropriate, issue an order either terminating or amending this Order, setting a status conference, and/or requesting further briefing.

1    ///

8.      The Court shall retain jurisdiction to enforce the terms of this Order and to hear any motion for attorneys' fees.

**IT IS SO ORDERED.**

Dated:   September 25, 2006

_____
SUSAN ILLSTON
United States District Judge

United States District Court

For the Northern District of California

7